UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **NAYEB FAMILY, LP,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:21-CV-1859-B** |
| | § | |
| **CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. CSXFQP0000024-00 and HD&S MANAGEMENT LLC,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Nayeb Family, LP ("NFLP")'s Motion to Remand (Doc. 7). In its motion, NFLP asks the Court to remand the case to state court and award NFLP attorneys' fees. For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** NFLP's motion. Specifically, because the Court concludes that Defendant HD&S Management LLC ("HD&S") is properly joined, the Court lacks subject matter jurisdiction over this dispute. Accordingly, the Court **GRANTS** NFLP's motion insofar as NFLP urges the Court to remand the case. But to the extent NFLP seeks an award of attorneys' fees, the Court **DENIES** its request.

## I.

## BACKGROUND

Sometime between August 29 and August 30, 2020, a large windstorm hit North Texas, causing significant damage to Plaintiff NFLP's building. Doc. 1-3, Original Pet., ¶ 8. "At the time, [the] building was undergoing a remodel to portions of its exterior, which [was] being performed by

Defendant HD&S." *Id.* In preparation for the storm, NFLP "covered . . . exposed portions of the building with plastic tarping . . . to prevent rainwater from entering the building." *Id.* NFLP alleges that, despite its efforts, "the violent nature of the storm allowed rainwater to enter the building, due to damage to the building and/or tarp . . . caused by the storm." *Id.*

Shortly after the storm, NFLP reported the property damage to its insurer, Defendant Certain Underwriters at Lloyd's London subscribing to Policy No. CSXFQP0000024-00 ("Lloyds"). *Id.* ¶ 9. On September 4, 2020, Lloyds sent a representative to inspect the building for the purposes of evaluating NFLP's claim. *Id.* NFLP alleges that this representative advised it that "the subject claim was covered" and instructed it to "proceed[] with repairs." *Id.* However, when NFLP began to submit invoices and estimates in October 2020, Lloyds allegedly changed its tune. *See id.* ¶¶ 10–11. "In March 2021, six . . . months after the claim was submitted, . . . Lloyds finally issued a written denial of [NFLP]'s claim." *Id.* ¶ 11.

On July 16, 2021, NFLP filed suit in state court naming Lloyds and HD&S as defendants. *Id.* ¶¶ 4–5. Lloyds is a citizen of a foreign state, while NFLP and HD&S are both citizens of Texas. *Id.* ¶¶ 3–5. Against Lloyds, NFLP brings various state law claims stemming from Lloyds's handling and ultimate denial of NFLP's insurance claim. *Id.* ¶¶ 12–24. Against HD&S, NFLP asserts a negligence claim to the extent that HD&S's negligent workmanship caused damage to the building. *Id.* ¶ 25.

On August 9, 2021, Lloyds removed the case to federal court on the basis of diversity jurisdiction—arguing that HD&S was improperly joined and that, therefore, its non-diverse citizenship should be disregarded. Doc. 1, Notice of Removal, 3. NFLP thereafter filed the instant

motion to remand, arguing that HD&S is properly joined, and that, by consequence, the Court does not have subject matter jurisdiction over this case. *See* Doc. 7, Pl.'s Mot., ¶ 8.

## II.

## LEGAL STANDARDS

A. *Removal Based on Diversity Jurisdiction*

"Federal courts are courts of limited jurisdiction." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017) (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). Thus, courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.* (citation omitted). And "[i]f the record does not contain sufficient evidence to show that subject matter jurisdiction exists, 'a federal court does not have jurisdiction over the case.'" *Id.* (citation omitted).

A defendant may remove a case from state to federal court based on diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a), 1441(a). Diversity jurisdiction requires complete diversity, which is "[t]he concept . . . that all persons on one side of the controversy be citizens of different states than all persons on the other side." *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (quoting *Harrison v. Prather*, 404 F.2d 267, 272 (5th Cir. 1968)). "[A]s long as a nondiverse party remains joined, the *only* issue the court may consider is that of jurisdiction itself. This is because 'a federal court *always* has jurisdiction to determine its own jurisdiction.'" *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016) (quoting *United States v. Ruiz*, 53.6 U.S. 622, 622 (2002)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The removal

statute is . . . to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

B. *Improper Joinder*

Though diversity jurisdiction requires complete diversity of parties, "[t]he improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011) (citing *McDonal v. Abbott Lab'ys.*, 408 F.3d 177, 183 (5th Cir. 2005)). Under the doctrine, a case involving a non-diverse defendant may nevertheless be removed to federal court if the non-diverse defendant was improperly joined. *See Ridgeview Presbyterian Church v. Phila. Indem. Ins. Co.*, 2013 WL 5477166, at *2 (N.D. Tex. Sept. 30, 2013) (citing *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)).

"[T]he purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined"; thus, "the focus of the inquiry [is] on the joinder, not the merits of [the plaintiff's] case." *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc). "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Id.* at 573. If the party fails to meet this burden and joinder of the in-state party was proper, removal will be inappropriate, and the federal court will not have subject matter jurisdiction. *Id.* at 575 ("The Supreme Court thus made clear that the burden on the removing party is to prove that the joinder of the in-state parties was improper . . . .").

## III.

## ANALYSIS

The parties agree that HD&S, if properly joined, destroys the complete diversity required for this Court to have subject matter jurisdiction. *See* Doc. 7, Pl.'s Mot.; Doc. 8, Def.'s Resp. Therefore,

the issue presented is whether HD&S was improperly joined as a defendant.[1] The Court first considers this question and concludes that HD&S was properly joined, and consequently, it lacks subject matter jurisdiction over this dispute. Next, the Court addresses NFLP's request for attorneys' fees and concludes that the request should be denied.

A. *The Court Lacks Subject Matter Jurisdiction Because HD&S Was Properly Joined*

Lloyds asks the Court to disregard HD&S's diverse citizenship because, according to Lloyds, HD&S was improperly joined to this action. Doc. 8, Def.'s Resp., 2. The Fifth Circuit has traditionally recognized "two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). Lloyds argues neither of these methods. *See* Doc. 8, Def.'s Resp., 2–3. Rather, Lloyds contends that the Court should find that "HD&S was improperly joined because Plaintiff failed to comply with the procedural joinder rules." *Id.* at 3.

Lloyds's "procedural misjoinder" argument derives from the Eleventh Circuit's "fraudulent misjoinder" theory laid out in *Tapscott v. MS Dealer Servs. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000). "The Fifth Circuit has not directly applied the fraudulent-misjoinder theory, but it has cited *Tapscott* with approval and has acknowledged that fraudulent misjoinder of either defendants or plaintiffs is not permissible to circumvent diversity jurisdiction." *Centaurus Unity, LP v. Lexington Ins. Co.*, 766 F. Supp. 2d 780, 789 (S.D. Tex. 2011) (citing *In re Benjamin Moore & Co.*, 318 F.3d 626, 630–31 (5th

[1] In addition to complete diversity, 28 U.S.C. § 1332(a) requires an amount in controversy exceeding $75,000. Here, NFLP requests "monetary relief over $1,000,000." Doc. 1-3, Original Pet., ¶ 2. Accordingly, the Court considers the amount-in-controversy requirement satisfied and focuses its analysis on whether complete diversity exists.

Cir. 2002)). For the purposes of the instant motion, the Court assumes without deciding that fraudulent misjoinder is a valid basis for disregarding the citizenship of a non-diverse party.

The fraudulent-misjoinder analysis has two steps. *Id.* First, courts determine whether "one defendant [has] been misjoined with another . . . in violation of the applicable joinder rules." *Id.* Second, if a defendant was improperly joined, courts consider whether the misjoinder is "sufficiently egregious to rise to the level of a fraudulent misjoinder." *Id.* Because the Court finds that HD&S was properly joined, its analysis ends at step one.

1. HD&S was Properly Joined

As a threshold matter, the Court recognizes that there is some tension among courts that recognize fraudulent misjoinder as to whether the joinder should be evaluated using state or federal law. *See Centaurus Unity, LP*, 318 F.3d at 630; *Fed. Ins. Co. v. Tyco Int'l Ltd*, 422 F. Supp. 2d 357, 381 (S.D. N.Y. 2006) (collecting cases); *Asher v. Minn. Mining & Mfg. Co*, 2005 WL 1593941, at *6 (E.D. Ky. June 30, 2005) (same). However, federal courts in Texas have regularly "applie[d] state joinder law in assessing whether there has been a misjoinder." *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F. Supp. 2d 555, 563 (N.D. Tex. 2009); *see, e.g.*, *Ashley v. Lexington Ins. Co.*, 791 F. Supp. 2d 559, 566 (S.D. Tex. 2011); *Brass Centerview 2016, LLC v. Nationwide Mut. Ins. Co.*, 2017 WL 10841486, at *7 (W.D. Tex. Jan. 5, 2017); *Henley v. Meyer*, 2015 WL 224369, at *4 (N.D. Tex. Jan. 16, 2015). Accordingly, the Court proceeds under the assumption that state procedural rules govern.[2]

Texas Rule of Civil Procedure 40(a) provides:

[2] Because "Texas has adopted the [federal] requirements for joinder," the distinction between state and federal law is "largely academic." *See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006). *Compare* Fed. R. Civ. P. 20(a), *with* Tex. R. Civ. P. 40(a). In the present circumstances, the difference between state and federal law is immaterial, as the Court would reach the same result under both.

> All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action.

Lloyds argues that HD&S was improperly joined under the Rule because (1) "Plaintiff does not (and cannot) seek to hold Underwriters jointly or severally liable with, or in the alternative to, HD&S"; (2) Plaintiff's claims "against [Lloyds] and HD&S are not in respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (3) "there is no question of law or fact common to Plaintiff's various claims against [Lloyds] and its claims against HD&S." Doc. 8, Def.'s Resp., 4. In response, NFLP asserts that its "claims against Defendants arise out of the same occurrence, the windstorm that damaged Plaintiff's building." Doc. 7, Pl.'s Mot., ¶ 7. Further, it argues that "[c]ommon questions of fact will arise . . . because the Defendants dispute who is responsible for Plaintiff's damaged building and how and why the damage occurred." *Id.* Because Lloyds bears the burden of showing that joinder was improper, *see Smallwood*, 385 F.3d at 573, the Court addresses each of its arguments in turn.[3]

*i. NFLP seeks to hold Lloyds severally liable with, or in the alternative to, HD&S*

Lloyds argues that NFLP's joinder of HD&S fails because HD&S cannot be held liable under NFLP's insurance policy with Lloyds, and Lloyds cannot be held liable for HD&S's alleged negligence.[4] Doc. 8, Def.'s Resp., 4. In support, Lloyds cites to *Wells Fargo* for the proposition that

---

[3] Though the requirement that joined claims arise out of the same transaction/occurrences is separate from the requirement that the claims contain a common question of law or fact, Lloyds's arguments as to each run hand-in-hand. Therefore, the Court addresses them together. *See infra* Part III(A)(1)(ii).

[4] The Court notes that there is some authority to suggest that the "jointly, severally, or in the alternative" language found in Texas Rule 40(a) and Federal Rule (a)(2)(A) "does not further limit the scope of permissible joinder beyond what is allowed by the 'same transaction' requirement." *See Tex. Instruments Inc. v. Citigroup Glob. Mkts., Inc.*, 266 F.R.D. 143, 148 n.5 (N.D. Tex. 2010); *Henley*, 2015 WL 224369, at *4 (N.D. Tex. Jan. 16, 2015) ("To the extent ERI suggests that language in Texas Rule 40(a) requiring the right to relief to be asserted against the defendants 'jointly, severally, or in the alternative' constitutes a third

joinder is improper where a plaintiff pursues a claim against a diverse defendant but does not seek recovery from any other non-diverse defendant on the same claim. *Id.* (citing *Wells Fargo*, 670 F. Supp. 2d at 563). Lloyds misreads *Wells Fargo*.

*Wells Fargo* concerned a set of plaintiffs' claims that a group of defendants had wrongfully attempted to rescind life insurance policies that the plaintiffs held in trust as investments. *Wells Fargo*, 670 F. Supp. at 557. As here, one defendant removed the case to federal court, arguing in relevant part that the plaintiffs had misjoined non-diverse defendants in attempt to defeat diversity jurisdiction. *Id.* at 558. Critically, the plaintiffs' claim against the diverse defendant was based upon one life insurance policy, while their claims against the remaining non-diverse defendants were premised upon a completely separate policy. *Id.* at 557, 563. Among other reasons, the court found that the parties were misjoined because the plaintiffs had failed to assert that the non-diverse defendants could be "held liable in any way" regarding the separate policy and its related sales. *Id.* at 563.

The crux of the court's misjoinder determination was not, as Lloyds argues, that the plaintiffs failed to assert the same cause of action against the non-diverse defendants as it did the diverse defendant. *See id.* at 564. Rather, the court emphasized that there were no allegations "to suggest concerted conduct, conspiracy, or any other joint action" between the defendants—the plaintiffs had merely alleged that the defendants had "carried out substantially identical strategies for substantially the same purpose." *Id.* In other words, the plaintiffs' ultimate recovery against the non-diverse

requirement of permissive joinder, . . . its suggestion is misplaced."). *But see Delphis, L.P. v. NFLP Holdings, Ltd.*, n. 11 (N.D. Tex. Nov. 3, 2010) (collecting Texas authorities interpreting the "jointly, severally, or in the alternative" language to evince an independent requirement under Texas Rule 40(a)). Because it does not change the disposition of the instant motion, the Court assumes without deciding that the "jointly, severally, or in the alternative" language constitutes an independent requirement for permissive joinder under Texas Rule 40(a).

defendants was for a separate harm and had no effect on their recovery against the diverse defendant. *See id.*

Here, unlike in *Wells Fargo*, NFLP seeks to hold Lloyds severally liable with, or in the alternative to, HD&S. That "HD&S can[not] be held liable under the Policy" is irrelevant. Doc. 8, Def.'s Resp., 4. NFLP's Petition states, "Plaintiff's damages may also have been due to Defendant HD&S's negligence in the performance of construction work related to the building remodel." Doc. 1-3, Original Pet., ¶ 25. Put simply, NFLP alleges that the building damage was caused by forces covered by its insurance, by HD&S's negligence, or to the extent possible, both. As such, the Court construes NFLP's petition to request that, with respect to the building damage caused by the storm, Lloyds be held severally liable with, or in the alternative to, HD&S. *See Tex. Instruments Inc. v. Citigroup Glob. Mkts., Inc.*, 266 F.R.D. 143, 148 n.5 (N.D. Tex. 2010) ("A request that each defendant be held liable only for its comparative or proportionate share of the plaintiff's damages is a request that the defendants be held severally liable." (citing *G.R.P. Mech. Co., Inc. v. Kienstra Concrete, Inc.*, 2006 WL 83466, at *3 (S.D. Ill. Jan. 11, 2006))); *see also Liability*, *Black's Law Dictionary* (11th ed. 2019) (defining "several liability" as "[l]iability that is separate and distinct from another's liability, so that the plaintiff may bring a separate action against one defendant without joining the other liable parties").

*ii. Plaintiff's claims against Lloyds and HD&S arise out of the same occurrence and common questions of law and fact exist*

The Court now turns to Lloyds's arguments that NFLP's claims against it and HD&S arise from separate transactions or occurrences, and that no common question of fact or law exists. Doc. 8, Def.'s Resp., 4. According to Lloyds, NFLP's claims against it arise out of its insurance policy with Lloyds, whereas NFLP's "claim against HD&S relates solely to the alleged negligence of HD&S in

the remodeling of Plaintiff's building." *Id.* Further, it argues that "the only question of law" relevant to HD&S is "whether HD&S owed a duty to Plaintiff" and the only questions of fact relate to establishing duty, breach, proximate cause, and damages—all irrelevant to the claims lodged against Lloyds. *Id.* at 5–6. NFLP, however, asserts that its claims against Lloyds and HD&S all "arise from the windstorm that damaged [its] building" and that common "questions of liability and causation among the Defendants are intertwined." Doc. 7, Pl.'s Mot, ¶ 7. The Court agrees with NFLP.

"Like the federal courts evaluating permissive joinder under Federal Rule of Civil Procedure 20, Texas courts apply a 'logical relationship' test to determine whether claims arise out of the same transaction or occurrence or series of transactions or occurrences." *S. Commodities, LLC. v. Cont'l W. Ins. Co.*, 2017 WL 5203051, at *4 (W.D. Tex. July 25, 2017) (citing *Tex. Instruments Inc.*, 266 F.R.D. at 147). Under this test, courts determine whether claims can be joined "not so much [based] upon the immediateness of their connection as upon their logical relationship." *Lexington Ins. Co. v. Daybreak Express*, 393 SW.3d 242, 244 (Tex. 2013) (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)). Additionally, to satisfy the "common question" requirement, a plaintiff need only identify "the presence of a solitary common question." *Brass Centerview*, 2017 WL 10841486, at *8 (quoting *Tex. Instruments Inc.*, 266 F.R.D. at 148)).

Lloyds's arguments are largely premised on its attempt to frame the issue as whether NFLP's claim against HD&S arises from its insurance policy with Lloyds. *See* Doc. 8, Def.'s Resp., 4–6. But Lloyds provides little persuasive support to justify this position.[5] Indeed, courts addressing facts more

[5] Lloyds cites to four cases as support for why this Court should find that Plaintiff's claims against it and HD&S arise out of separate occurrences. *See* Doc. 8, Def.'s Resp., 5 (citing *Willingham v. State Farm Ins. Co.*, 2009 WL 2767679 (N.D. Miss. Aug. 27, 2009); *Milliet v. Liberty Mut. Ins. Co.*, 2008 WL 147821 (E.D. La. Jan. 11, 2008); *Frankland v. State Farm Fire & Cas. Co.*, 2008 WL 4072819 (W.D. La. July 2, 2008); and *Smith v. Nationwide Mut. Ins. Co.*, 286 F. Supp. 2d 777 (S.D. Miss. Sept. 29, 2009)). Two—*Willingham* and *Milliet*—found that plaintiffs' claims against property insurers did not arise from the same occurrence as their

analogous to those at bar have rejected such a narrow view. *See Brass Centerview*, 2017 WL 10841486, at *8; *see also S. Commodities, LLC*, 2017 WL 5203051, at *5 (finding that a plaintiff's claim against its insurer arose from the same set of occurrences as its claims against the individual adjuster who handled the claim); *Ypi Norfolk Tower v. Travelers Lloyds Ins. Co.*, 2009 WL 10698212, at *5 (S.D. Tex. July 29, 2009) (finding that a plaintiff's claims against its insurer for allegedly covered property damage arose from the same set of occurrences as its claims against a roofer for negligently repairing the damage).

For example, in *Brass Centerview*, the court considered materially identical facts. *See Brass Centerview*, 2017 WL 10841486, at *1. There, the plaintiff filed suit in Texas state court "asserting claims related to . . . an insurance policy . . . pertaining to extensive hail and water related damages to fourteen commercial buildings." *Id.* The defendant-insurer denied the plaintiff's insurance claim in part because it contended that damage to the plaintiff's HVAC system was caused by "non-storm mechanical damage, [and] lack of maintenance" among other issues. *Id.* As such, the plaintiff joined a separate, non-diverse defendant which it had contracted with to maintain its HVAC system and

---

claims against contractors hired to repair or rebuild the properties *after* they were damaged or destroyed, and *after* the scope of the damage from the destructive event was established. *See Willingham*, 2009 WL 2767679, at *1; *Milliet*, 2008 WL 147821, at *1. *Contra Ypi Norfolk Tower v. Travelers Lloyds Ins. Co.*, 2009 WL 10698212, at *5 (S.D. Tex. July 29, 2009) (reaching the opposite conclusion on similar facts when a central question was whether damage was caused by the destructive event or the repairing contractor). Another—*Frankland*—found that a plaintiff's claim against her property insurer did not arise from the same occurrence as her claim against a private adjuster whom she separately hired to handle her insurance claims. *Frankland*, 2008 WL 4072819, at *4. None of these cases is factually analogous to the present circumstances. The final case—*Smith*—found that a plaintiff's claim against his insurer did not arise from the same occurrence as his claims against the tortfeasor who caused his injuries. *Smith*, 286 F. Supp. 2d at 779–81. However, the court's opinion in *Smith* summarily concludes that the claims were misjoined without any discussion of whether the claims arose from the same occurrence. *See id.* As such, the Court finds this case unpersuasive. *See S. Commodities, LLC*, 2017 WL 5203051, at *4 (commenting that *Smith* "is unpersuasive as the decision fails to engage in the two-step analysis contemplated by *Tapscott*").

pleaded its negligence in the alternative. *Id.* The defendant-insurer removed to federal court, arguing that the HVAC servicer was fraudulently joined because the claims against the two defendants did not arise from the same transaction or occurrence. *Id.* at *2.

The court remanded the action. *Id.* at *8. In doing so, it noted that "[c]ourts are inclined to find that claims arise out of the same transaction or occurrence when there is a likelihood of overlapping proof and duplication in testimony." *Id.* Further, it found that the "[l]iability for damage to [the] HVAC units create[d] a common question of law and fact." *Id.* The common question of law was that "either [the insurer] is liable for providing insurance coverage for the damage to the units or [the HVAC servicer] is liable for failing to properly maintain and repair the units or neither are liable." *Id.* The common question of fact was the origin of the damage to the HVAC units, which would ultimately be determined by the fact-finder. *Id.*

The instant facts track *Brass Centerview* almost perfectly. Here, as in *Brass Centerview*, a plaintiff sued its insurer for denying coverage for property damage resulting from a storm. *See id.* at *1; Doc. 1-3, Original Pet., ¶ 8. Like the *Brass Centerview* plaintiff, NFLP has alleged that the negligence of a third party—HD&S—may be responsible for all or a portion of the damage suffered. *See Brass Centerview*, 2017 WL 10841486, at *8; Doc. 1-3, Original Pet., ¶ 25. Thus, just like in *Brass Centerview*, the claims arise from the same occurrence—the storm. *See Brass Centerview*, 2017 WL 10841486, at *8.

Moreover, the liability for the damage to the building "creates a common question of . . . fact." *Cf. id.* Put simply, "either [Lloyds] is liable for providing insurance coverage for the damage to the units or [HD&S] is liable for" its negligent acts causing the damage, or both are liable, or neither are liable. *See id.* Thus, the fact-finder's determination of the cause of the building's damage is central

to both claims. *Cf. id.* This question of fact, standing alone, is sufficient to satisfy the "common question" requirement of permissive joinder under Texas Rule 40(a). *See Tex. Instruments Inc.*, 266 F.R.D at 148.

Lloyds has not offered a persuasive justification for this Court to deviate from the *Brass Centerview* court's reasoned conclusions on the same issues considering near-identical facts, and the Court can identify no reason to do so. Therefore, the Court finds that HD&S was properly joined—thus destroying diversity of citizenship—and that NFLP's Motion to Remand should be granted.

*B. Attorneys' Fees*

NFLP asks the Court to award it attorneys' fees incurred in relation to its motion to remand under 28 U.S.C. § 1447(c). Doc. 7, Pl.'s Mot., ¶ 9. Given Lloyds's objectively reasonable basis for removal, the Court will not do so.

Under 28 U.S.C. § 1447(c), when a district court remands a case, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." While the court should not consider a defendant's motive for removal in deciding whether to require payment of attorneys' fees it should consider "whether the defendant had objectively reasonable grounds to believe removal was legally proper." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000).

Here, Lloyds's removal was based on the legal theory that Defendant HD&S, though non-diverse, was improperly joined. *See* Doc. 8, Def.'s Resp., 7. While Lloyds may have overlooked in-circuit authority hostile to its position, the Court does not find its grounds for removal to be objectively unreasonable. Instead, it appears that Lloyds, operating without the benefit of significant

mandatory authority on the subject, made a reasonable argument that the Court should extend existing case law to a new context. Under these circumstances, the Court does not find Lloyds's removal objectively unreasonable and will not award attorneys' fees to NFLP under 28 U.S.C. § 1447(d).

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** NFLP's motion (Doc. 7) and **REMANDS** this case to the 298th Judicial District Court of Dallas County, Texas, for further proceedings, with each party to bear its own costs.

**SO ORDERED**.

**SIGNED: September 29, 2021.**

**JANE J. BOYLE**
**UNITED STATES DISTRICT JUDGE**